HOOKER *v.* McRAE.

[95 South. 744. No. 23125.]

FRAUDS, STATUTE OF. *Contract not invalid under statute in sister state where made held enforceable in this state.*

Under the laws of Tennessee the statute of frauds does not affect an oral contract until the value amounts to five hundred dollars, and where in that state the agent of a party procures another to buy cross-ties for his principal, and such party does buy ties in accordance with a price list furnished by such agent and places the ties on the railroad to be taken up by the principal, and the principal agrees after they are so placed to take them up as soon as cars can be placed so to do, but never in fact takes them up, such agreements constitute a valid contract between the parties, and may be enforced in the courts of this state.

APPEAL from circuit court of Alcorn county.

HON. C. P. LONG, Judge.

Suit by Bill Hooker against F. K. McRae. From a judgment for defendant in the circuit court reversing a judgment of the justice of the peace court, plaintiff appeals. Reversed and remanded.

*W. J. Lamb,* for appellant.

This is a Tennessee contract, and governed by the laws of the state of Tennessee, and under the statute of frauds of the state of Tennessee the contract is not within the statute.

Chapter 118 of the Public Acts of Tennessee of the year 1919 says as follows: "Sec. 4. That (statute of frauds): (1) A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upwards shall not be enforcible by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged his agent in that behalf."

The record shows that appellee, through his agent, made a contract with the appellant to buy cross-ties from him, and acting on this contract the appellant purchased ties and put them on the right of way of the M. & O. Railroad, where they were agreed to be put for the appellee. The appellant notified the appellee to come and take up the ties. The appellee at first denied his contract, when the appellant came to Corinth to see the appellee and had a talk with him, and the appellee said he would have to take the ties, but never did so.

The appellant sued the appellee for these ties, and the court gave a peremptory instruction on the ground that it was a unilateral contract. A very similar case to the case

at bar is the case of *Ross* v. *Morrimac Veneer Co.*, 92 So. 823, where the court said: "We are of the opinion the contract is not unilateral, but the mutuality is implied, and the obligation on the part of the Maley Company to deliver the logs was reciprocal; while mutuality is not shown expressly on the face of the contract, yet the obligation to deliver may be implied from the intention of the parties and the consideration on which the expressed obligation to purchase is based."

In other words, in such a contract the mutual obligation may be implied by inferences drawn from the other and remaining terms and conditions of the contract as to the intent of the parties. And we do not hesitate to say it is clear in the case before us that, when the Maley Company accepted and signed the offer made by the Veneer Company the Maley Company intended to be bound to carry out the terms by delivering the logs as provided in the contract. Moreover, acceptance and part performance would create mutuality. Therefore it is bilateral and enforceable by the Maley Company or its assignee, appellant Ross. 13 C. J. 180, p. 334; 6 R. C. L., sec. 95, pp. 688, 589; *Pullman Co.* v. *Meyer*, 195 Ala. 397, 70 So. 763; *L. & N. Railroad* v. *Coyle*, 123 Ky. 854, 97 S. W. 722, 99 S. W. 237, 8 L. R. A. (N. S.) 433, 124 Am. St. Rep. 384. There is no trouble in determining what was the intention of the parties at the time this agreement was entered into.

In 9 Cyc., p. 577, we have the following: "The first and main rule of construction is that the intent of the parties as expressed in the words they have used must govern. Greater regard is to be had to the clear intent of the parties than to any particular words which they may have used in the expression of their intent. If the words used clearly show the intention, there is no need for applying any technical rules of construction for where there is no doubt there is no room for construction."

We respectfully submit the appellee was not entitled to any peremptory instruction in this case, and the case should be reversed.

*W. C. Sweat,* for appellee.

There is but one proposition in this case, and when that
is determined the lawsuit is decided. Did appellant have
a contract with appellee? If he did, the case should be
reversed and remanded; if he did not, the case will have
to be affirmed. On page 15 of the record is a copy of the
alleged "contract." In their testimony, both appellant and
his witness, Miss Ellis, testified repeatedly that this writ-
ing was the only contract. Counsel for appellant says
that the contract was not within the statute of frauds in
Tennessee, and did not have to be in writing. But all the
proof shows that appellant had only this written "con-
tract," and was basing his right of recovery upon it. The
judgment, or rather, the summing up of the court, shown
on page 16 of the record, shows that appellant was proceed-
ing on "written" contract this time, although he had
abandoned it on the former trial and had there proceeded
on the oral contract alleged to have been made between
them. This court seems to have been rather liberal in
construing contracts, and very properly so; but we do not
believe even this court can make a contract out of an ordi-
nary price list. This price list is shown on page 15 of the
record. An inspection of it shows that it is nothing more
nor less than a price list, and in no sense a contract. It
would serve no good purpose to try to point out why a
price list is not a contract, or why the instrument on page
15 of the record is not a contract, which is the same thing.
All that could be done would be to point out the essential
features of a contract, the things which make an instru-
ment a contract, and then to call attention to the obvious
fact that the instrument sued on is lacking in absolutely
every one of these characteristics of a contract.

Counsel for appellant says that when appellant showed
appellee the "contract," appellee admitted that appellant
had him. We insist that even this could not possibly con-
vert this instrument into a contract. He also says that it
is obvious from the record what were the intentions of the

parties, whether you call this instrument a price list or a contract. But this is not obvious from the instrument itself. It must speak for itself; the negotiations cannot be read into it unless they are carried forward and embodied in it. Counsel says that mutuality will be implied. If it is implied in this case, it would have to be implied, with nothing from which to imply it; for this instrument is not even unilateral; it is neutrilateral; there is nothing about it that indicates an intention on the part of anybody to bind himself. It is merely a publication of the fact, if it is anything, that McRae Lumber Co. were in the market for cross-ties and were willing to buy at that time, whatever it was, the prices named in the list. If a mere price list could be turned into a binding contract by the act of anyone into whose hands it might fall, it would be a dangerous thing for any man to advertise his business.

We submit the trial court was right in directing a verdict for the defendant, and we therefore ask that the judgment of the lower court be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellant, who was plaintiff below, brought suit against the appellee for one hundred forty-five dollars and eighty-five cents for cross-ties purchased by the appellant for the appellee. This contract was made in the state of Tennessee, and it appears that C. C. McRae, son of the appellee, came to the store of the appellant and asked him to buy ties for their account. The appellant testified that he asked McRae what kind of ties he desired and McRae said, "I will give you a contract," and wanted soft-wood ties, and he gave him a price list signed by C. C. McRae for the McRae Lumber Company, owned by the appellee; that appellant thereupon bought and caused to be delivered upon the Mobile & Ohio Railroad cross-ties of the several kinds mentioned in the account and notified the appellant that they were placed upon the railroad subject to his order; that no notice was taken of this fact by the appel-

lee, and that appellant then went to the appellee's place of business in Corinth, Miss., and made a demand upon him for payment of his said account; that McRae said he was not buying any more ties, and that he told him he would have to take the ties which he had placed on the railroad for him because he had a contract for them; that McRae demanded to see the contract, and he showed him the statement signed by C. C. McRae giving the price of the different kinds of ties he purchased; that the appellee then said, "Well, you have me, and I will take the ties up as soon as I can get cars placed;" that he never heard anything more from McRae for some months thereafter, and he then declined to take up the ties and pay for them, whereupon he brought this suit. There was a judgment in the justice of the peace court for the plaintiff, from which the defendant appealed to the circuit court, where there was a peremptory instruction for the defendant, from which this appeal is prosecuted.

The contract is governed by the laws of the state of Tennessee, and under the laws of that state the statute of frauds (chapter 118, Public Acts of Tennessee 1919, section 4) does not apply to a contract for less than five hundred dollars; in other words, an oral contract in that state is good up to the amount of five hundred dollars. The plaintiff's version of the contract made in the store is supported by a young lady working for the plaintiff, and he testifies that the defendant, after the ties were gotten out and placed upon the railroad, agreed to pay for them.

We think, if the plaintiff's evidence is true, that he was entitled to recover, and that a peremptory instruction was error.

The judgment will be reversed, and the cause remanded.

*Reversed and remanded.*